| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| Jack Treadwell, | § § | |
| Plaintiff, | § § | |
| versus | § § | Civil Action H-04-4249 |
| Service Corporation International, et al., | § § | |
| Defendants. | § § | |

## Opinion on Dismissal

1. *Introduction.*

A man sold his business for cash and securities. He says that the buyer lied about its liabilities. The company has moved to dismiss his complaint for failure to state a claim, and it will prevail.

2. *Background.*

Founded in 1962, Service Corporation International, Inc., is North America's largest funeral, cremation, and cemetery supplier. The company is headquartered is in Houston. In 2004, it employed about 20,000 workers across the continent and its revenues exceeded $1.8 billion. Service is publicly traded.

During the 1990s, Service bought thousands of funeral homes and related businesses, often from individual owners. It managed them in "clusters," pooling resources like personnel, vehicles, and equipment. Service typically acquired the assets and liabilities from a seller, including the liability for the funeral contracts of future decedents – the so-called "pre-need" contracts.

These contracts represent sales to people now for funerals when they die, much like commodities future contracts, but for services. The collected funds are held in trust; earnings are intended to cover increases in costs. Service was obliged to perform the acquired contracts

and to manage the assets. In 1997, following a study of its portfolio of futures contracts, Service designed a new investment plan to increase its returns through better asset selection and management.

On June 10, 1998, Jack Treadwell sold his funeral home in Macon, Georgia, to Service. In exchange, he received approximately $800,000 in cash and $1.2 million in Service stock.

In January 1999, Service announced losses for the fourth quarter of 1998. In response, the company's stock price dropped forty-four percent.

On January 25, 2000, Treadwell sued, arguing that Service submitted misleading statements to the Securities and Exchange Commission in 1997 and 1998. Specifically, he complains that Service misrepresented its financial condition by omitting a "backlog" of mismanaged futures contracts that Service had acquired in the mergers from its financial disclosures. He says that those liabilities caused the stock price to fall, and he would not have sold his funeral home to Service had he known the truth. Treadwell sues Service and its directors individually for "drafting, reviewing, and disseminating" the statements. Service has moved to dismiss the complaint for lack of particularity and for failure to state a proper claim.

3. *Treadwell's Complaints.*

Treadwell filed his original complaint in January of 2000. The action was soon consolidated with a securities fraud class action. In November of 2004, the class action settled, but without Treadwell; his action was severed, and he was ordered to amend his complaint. It replicated the original complaint almost word for word.

Although Treadwell says he had very little time to file an amended complaint, he had nearly five years to investigate and improve his initial complaint, but chose not to do so. The amended complaint is as imprecise and unclear as the original. Its allegations are without factual bases. The most that the complaint specifies is that Service lost money on some contracts during the 1990s. Failure to meet analysts' expectations or achieve financial goals, however, are not indicia of fraud by themselves. In fact, they are common occurrences in the normal course of business.

Further, Service did not conceal its financial difficulty from its investors. Instead, it responded to it directly by instituting a new program to attempt to mitigate losses, as disclosed in its 1996 Form 10-k. Again, failure of this program to work as planned does not demonstrate plan to defraud; at worst it shows poor planning.

Recognizing these and other flaws, the court gave Treadwell the opportunity to file a proposed second amended complaint. Treadwell was admonished to clarify the facts supporting his claim; however, Treadwell's proposed complaint merely added irrelevant background information. Treadwell's motion to amend will be denied.

4. *The Study.*

To prove liability for misleading statements, Treadwell must identify a particular statement or omission of fact in an SEC filing that was misleading at the time it was made. 15 U.S.C. § 78r (2006). He does not. That he read the filing, acquired stock, and the price dropped, are insufficient.

Service made no material misrepresentation or omission to the SEC. Treadwell does not offer a single deceptive financial datum in the filings. Instead, he says that Service must have known something that he did not; otherwise, the stock price would not have continued to drop. Service disclosed the results of the futures study and launched a new plan to address the problem. Losses that continued beyond this assessment are not fraud. Further, Treadwell's mis-statements about the results of the futures study are his sole factual support for his claims.

Service has shown that Treadwell's accusations are false. The futures study does not contradict Service's disclosures. It does not support that Service acquired funeral homes with poorly managed trust assets, nor does it suggest that the contracts would be performed at a loss. The study actually shows that the return on the assets was projected to exceed inflation by two percent. Treadwell does not refute the text of the study before the court, he only wants the court to ignore it and rely on it simultaneously.

5. *Investment Plan.*

Treadwell says that when Service reported the new investment program, it misled him by failing to disclose that the plan only would apply to trusts acquired in the future. Again, he makes assertions with no factual support; this does not state a claim.

Contrary to Treadwell's assertion, the study does not say that it will manage only trusts acquired in the future, and internal memoranda of Service support the opposite conclusion.

Additionally, in its SEC filings, Service refers to a reallocation of its entire portfolio into a new ratio of equity to fixed income. Besides being counter-factual, Treadwell does not explain why Service would study improved returns on its investment and then apply what it learned to only a portion of its trusts.

6.   *Stock Appreciation.*

Treadwell also says that Service told him the stock was going to go up. He says he relied on this statement in his decision to accept stock as part of the sale price. This is like a used-car salesmen who says, "You will like this car" – it is opinion or conjecture. The statement cannot be used as evidence of fraud, and it is irrelevant to a Section 18 claim. Whatever was said over dinner at the Ritz-Carlton in Atlanta, Treadwell and Service embodied their agreement in documents. Treadwell is precluded from using a promise of the stock price increasing because all negotiations and conversations are merged into the actual deal and in the papers.

Treadwell chose to sell his business for a combination of cash and stock. That he opted to acquire and hold the stock rather than take cash or sell it when prices were higher is not fraud.

7.   *Common Law Fraud.*

Fraud requires an intentional misstatement of a present material fact that is reasonably relied on. Fraud that relies on a representation now of an act to be performed in the future, although properly belonging to contract, requires evidence of (a) a present intention not to perform and (b) a performance under the control of the defendant. Neither fact has been pled here. "Up" is not a reasonably reliable datum – not a fact that will support fraud. People selling a business know many ways to structure the compensation. Treadwell chose to ask for 40% in cash and 60% in stock, and Service accepted.

Treadwell cannot use a coercion defense to invalidate this sale. Service's supposed repeated attempts to get Treadwell to sell the business is not coercion, nor was taking him to a fancy dinner or trying to get friends and family to convince him to sell. This was a choice made of his own free will and is similar to any other business decision where risks and benefits must be weighed.

Had Treadwell been concerned about the market risks, he could have asked for all cash or part cash and part stock with a repurchase obligation by Service if the stock price went down by some amount. Each arrangement may have had its own price because Service would have been balancing its appraisals of the risks. Treadwell now wants the benefit of a deal he did not make and wants it free of the offsetting price changes that would have been part of it. Treadwell's lawsuit is baseless.

8.  Conclusion.

Jack Treadwell has failed to identify a material misleading statement or omission on which he relied in the SEC filings. He will take nothing against Service Corporation International and its directors.

Signed on August 31, 2010, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge